THE PHŒNIX POTTERY COMPANY, PLAINTIFF, APPEL-
LEE, v. THE ARTHUR L. PERKINS COMPANY, DEFEND-
ANT, APPELLANT.

Argued June 1, 1909—Decided October 23, 1909.

1. An agent employed by a pottery company to take orders from customers for its wares, in the absence of express authority or proof of similar previous dealings known to and approved by the company, cannot bind his principal by entering into a contract with a purchaser that his company will receive and allow deductions for imperfect goods previously shipped to the customer by other companies.

2. The fact that the agent was sent to collect the bill for ware sold by him to such purchaser, and that he received a check in part payment of the bill, and with that check received a claim for such defective goods; and the fact that the principal used the check with knowledge of such claim, is not a ratification of the agent's authority—the agent's right to so contract being at once repudiated by his principal.

3. The act (*Pamph. L.* 1905, *p.* 494) which requires that a demand for a jury in a District Court shall be made in writing one day before the return of the summons or the right of the party to a jury shall be deemed to be waived, is not unconstitutionally restrictive of the right to trial by jury.

On appeal from the First District Court of Jersey City.

Before Justices REED, BERGEN and VOORHEES.

For the plaintiff, appellee, *James J. Murphy.*

For the defendant, appellant, *Joseph Anderson.*

The opinion of the court was delivered by

REED, J. This action is brought upon an account for goods sold and delivered by the Phœnix Pottery Company to the Arthur L. Perkins Company.

The defendant sets up that the plaintiff furnished pottery unfit for use, which pottery the defendant was compelled to return, and did return, and that these goods formed a part of

the goods sued for; that the plaintiff promised also to take in payment for the goods sold by it certain other defective goods, which goods were also sent to the plaintiff.

The cause was tried on April 15th, 1909. Apart from the questions raised on the trial of the cause, the appellant raised two preliminary questions. First, it asserts that the defendant was denied the right of a trial by jury. Respecting this question, it appears that the summons in the case was issued April 1st, 1909, and was returnable April 8th. On the return date, the plaintiff filed its state of demand, and moved for an adjournment, which was granted—the adjournment being to April 13th. On April 13th, the adjourned date, the defendant filed its set-off, and also filed a demand for a trial by jury, and paid the costs of the *venire*. On April 15th the cause was tried, the demand for a jury trial being refused.

It appears that there was no demand for a jury trial by the defendant before the return date, and the appellant admits that the statute (*Pamph. L.* 1905, *p.* 494) provides that in actions in the District Court, a party shall demand a trial by jury in writing one day before the return date of the summons, or his right to a jury trial shall be deemed waived.

The ground taken by the appellant is that the limitation of the period within which a demand for a jury trial must be made is unreasonably restrictive upon the right of a jury trial, and is therefore unconstitutional.

It was held in *Condon* v. *Royce,* 39 *Vroom* 222, that the requirement contained in the original District Court act of 1898, section 149, that the demand for a jury should be made at least one day before the time fixed for trial, else a jury trial should be deemed to be waived, was constitutional. Now, under section 147 of the District Court act, it is provided that when the parties appear at the time and place expressed in the summons, the court shall proceed to hear and examine their respective allegations and proofs, and render judgment in the cause, unless the judge shall think it proper to adjourn the trial. The grounds for adjournment are set out in section 148 of that act; but a failure to demand a jury trial previous to the return date, and the desire to have a jury

trial expressed on the return date, is not one of the grounds for an adjournment.

So that even before the act of 1905 (p. 494), if the cause was ordered to be tried on the return date, a demand for a jury trial, to have been efficacious, must have been made two days before the return.

But apart from this, the limitation of the time in the statute was not unreasonable. It aids in the expedition in the trial of a class of cases cognizable by the District Court. It renders adjournment unnecessary for the purpose of offering an opportunity to demand a jury trial, and so far as concerns the point that the defendant does not know the character of the claim against him until the state of demand is filed, it has no substance; so the action of the court in denying the trial by jury was correct.

The court also refused to arrest the trial because of the point taken that the costs of the former action between the same parties, for the same cause, had not been paid. Nothing appears in the record to show what that action was, nor to show that the costs in any action between the same parties had been taxed, demanded and payment refused.

Upon the merits of the cause, the principal complaint of the defendant is that the court refused to credit against the plaintiff's bill a sum of $203.21 being the amount of certain goods returned by the plaintiff to the defendant as defective. These goods had not been shipped to the plaintiff by the Phœnix Pottery Company, but had been shipped to it by other companies known as the Globe Pottery Company and the Ironsides Pottery Company.

At the date of the shipment of the goods for which the plaintiff sues, both of these companies had ceased business. The affairs of the Globe Pottery Company appear to have been wound up by a receiver; and what became of the other company does not appear. It does appear that while some of the stockholders of the Phœnix Pottery Company had been stockholders of one or both of the other companies, the Phœnix Pottery Company was a distinct organization, incorporated about July, 1908.

The goods for which suit is brought were billed to the defendant on August 25th and 28th, and on September 5th, 11th, 18th and 26th in the year 1908. It appears that the order for these goods was taken by William L. Cauley, a sales agent for the Phœnix Pottery Company. It appears that Mr. Cauley had also acted as sales agent for the Globe Pottery Company and for the Ironsides Pottery Company while they were in existence.

In the course of the trial, Mr. Perkins, the president of the Arthur L. Perkins Company, was sworn, and stated that Mr. Cauley had visited his company in the summer of 1908 and solicited the order for the goods shipped to defendants, for which suit is brought. Mr. Perkins was asked to state the conversation he had with Mr. Cauley in respect to the other goods purchased from the Globe and Ironsides companies, and which he claimed had proved defective; but testimony respecting the defective goods sent to the defendant by the other two companies was, upon objection, excluded by the court. Then Mr. Perkins was permitted to testify to the fact that on about October 2d, 1908, Mr. Cauley had called upon defendant and requested payment upon account of $837.90, the bill for the goods in question; that Mr. Perkins gave Mr. Cauley a check of the Arthur L. Perkins Company drawn to the order of the Phœnix Pottery Company for $500, dated October 2d, 1908. Mr. Perkins also said that with the check he gave to Mr. Cauley, he also gave him a remittance sheet for the goods returned, amounting to $203.21. All the goods mentioned in this remittance sheet—which sheet was in the shape of a bill sold to the Phœnix Pottery Company—were goods purchased from the old Globe and Ironsides Pottery companies, although that fact did not appear upon the face of the bill.

On October 2d, 1908, the date of the $500 check, the Perkins company wrote to the Phœnix Pottery Company stating that it, the Perkins company, had returned some defective ware, after notifying Mr. Cauley of the matter. This letter does not mention the amount of ware so returned, nor does it state clearly that the ware, or any part of it, had been sold

to the Perkins company by the Globe company or the Ironsides company.

On October 6th the Phœnix Pottery Company wrote the Perkins company announcing that they had received a lot of ware which had not been shipped by the Phœnix company to the Perkins company, and asking if it was returned to be refired. On October 12th the Perkins company wrote the Phœnix company that all these goods were shipped from your —the Phœnix company's—plant, either by the Ironsides Pottery Company, the Globe Pottery Company, or the Phœnix Pottery Company; that when Mr. Cauley first called upon the Perkins company in the interest of the Phœnix Pottery Company, he had guaranteed to make good the defective goods shipped in former sales.

A number of other letters were put in evidence, none of them changing the position of the parties already exhibited. The plaintiff refused to receive and accept the defective goods formerly shipped by other companies, and refused to make any deduction from its bill on account of such defects.

The trial court ruled that neither the conversation between Mr. Cauley and Mr. Perkins at the time the order was given, nor at the time the check was delivered, was competent to bind the Phœnix Pottery Company. This ruling was obviously accurate, for no authority existed in Mr. Cauley, by reason of his authorization to take orders and state rates, to agree that his principal should discount bills by allowance for defective goods sold by other companies. Such an arrangement was neither within the implied nor the apparent authority of Mr. Cauley.

The real insistence of the appellant, however, seems to be that the plaintiff ratified the action of its agent by the acceptance of the check for $500 with notice of the claim of the defendants; that it had a right, based upon its agreement with Cauley, to return the defective goods, and deduct their sales value from the bill for $837.90.

Now, this ratification, if existing, must have resulted from the acceptance and use of the check by the Phœnix company; for as soon as a claim for payment for the defective goods

shipped by other companies was made clear to the Phœnix company, it at once repudiated any such contract or liability.

When the check was accepted and used by the Phœnix company, the Perkins company had received ware amounting to $837.90. On this amount no cash had been paid. There was an item for defective goods shipped by the Phœnix company amounting to $37.90, to be deducted. Assuming that the additional claim of $203.21 for the alleged imperfect ware shipped by other companies was deducted, yet there was over $500 due to the Phœnix company. It is claimed that by using the check for what was admittedly due, the Phœnix company was estopped from disputing the claim for a deduction from the remainder of the bill.

There was no evidence of ratification of the agent's alleged contract, and the judgment must be affirmed.